**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAREN ANDERSON,** | ) | |
| Plaintiff, | ) | Case No. SACV 11-01820 AJW |
| v. | ) | MEMORANDUM OF DECISION |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

///

///

///

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a March 5, 2010 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff has severe impairments consisting of disorders of the cervical and lumbosacral spine, fibromyalgia,[1] and Sjogren's syndrome.[2] [Administrative Record ("AR") 18]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform medium work from January 13, 2006 to January 2007, and that she retained the RFC to perform light work from the beginning of January 2007 through the date of the ALJ's decision. [AR 19]. The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing past relevant work as a computer typesetter or keyliner, customer complaint clerk, inventory clerk, receptionist, and cosmetics sales person. [See JS 2-3; AR 16-27].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

---

[1] "This syndrome, formerly called fibrositis, has traditionally been [described as] 'an ill-defined, poorly understood set of symptoms, consisting of aching pain and stiffness in one or several parts of the body.'" Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004). (internal quotation marks and citation omitted), overruled on other grounds by Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).

[2] Sjogren's syndrome is "a chronic inflammatory autoimmune disease that affects especially older women, that is characterized by dryness of mucous membranes especially of the eyes and mouth and by infiltration of the affected tissues by lymphocytes, and that is often associated with rheumatoid arthritis." Kasper v. Astrue, 2012 WL 3879258, at *2 n.2 (D. Or. Sept. 6, 2012) (internal quotation marks and citation omitted).

Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected her testimony about her subjective symptoms. [JS 3-6].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885.  "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The record shows that plaintiff gave a history of dry eyes and mouth, and joint, limb, and back pain for several years preceding her alleged onset date in January 2006. [AR 176, 184].  At that time, she reported having been under "considerable stress." [AR 184].  She said that her symptoms improved as her stress decreased.  She reported that she did very well for several years and was able to stop using eye drops, but that her symptoms recurred in early 2005. [AR 184].  She underwent lacrimal duct plugging in February 2007 for treatment of her dry eyes. [AR 218, 280-281].  The record also shows that plaintiff had soft tissue

tender points in the neck, arms, elbows, shoulders, knees, back, and buttocks. [AR 218, 225, 227, 229, 231, 235, 237, 310]. She had mildly decreased motion in her neck. [AR 310, 313]. A September 2005 lumbar spine MRI resulted in "normal" findings. [AR 204]. In August 2007, an MRI revealed a two millimeter disc bulge at the C5-6 level with minimal canal stenosis, multi-level disc desiccation, and mild dextroscholiosis. [AR 319-321]. Nerve conduction studies of the lower extremities in April 2007 were "consistent with a mild right L5 and S1 radiculopathy." [AR 358].

> Plaintiff characterizes her hearing testimony as follows:
>
> [S]he stopped working because she was unable to physically or mentally handle her job. She reported that she was depressed with concentration, focus and memory problems. She testified that she does water aerobics twice a week, pilates once a week and goes for occasional short walks. She said she has visual limitation and can only be on a computer for a short time. After surgery for her eyes and extensive treatment, there was no improvement, but the doctors had nothing more to offer her to improve her vision. She testified that she could only sit or walk about 20 minutes. She is in constant pain and uses heat pads. She also reported several migraines a week. . . . [S]he suffered from a lot of fatigue and insomnia. There would be days that she spent the day in bed. She reported that she needs to lie down during the day.

[JS 3 (citing AR 36-42, 47-48, 50-51)].

The ALJ concluded that plaintiff's testimony about her subjective symptoms was not fully credible. [AR 22-23]. Specifically, for the period from January 13, 2006 to the beginning of January 2007, the ALJ found that plaintiff retained the RFC to lift and carry fifty pounds occasionally and twenty-five pounds on a frequent basis without other limits. [AR 19]. From January 2007 through the date of her decision, the ALJ found that plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; sit for eight hours out of an eight hour day; stand or walk for six hours in an eight hour day, "except that she must be able to change position for 3 minutes every hour"; occasionally use the right lower extremity for pushing and pulling and operating foot controls; occasionally climb stairs, ladders and scaffolds; and occasionally bend, balance, stoop, kneel, crouch and crawl. [AR 19]. The ALJ further found that plaintiff could use both upper extremities for occasional work above shoulder level. [AR 19].

The ALJ provided several reasons to support her credibility finding. First, the ALJ concluded that plaintiff's subjective complaints about the severity of her sight and speech restrictions were inconsistent with other evidence in the record. [AR 21]. During the hearing, plaintiff said she "can't read with my eyes," and also said she could "read about two pages and then I have to stop . . ." [AR 40; see also AR 42 ("I can't read right now . . .")]. She also explained that when she wakes up she "can't speak at all," and that she can "barely talk" the rest of the time. [AR 42]. However, Dr. Aarchan Joshi conducted an eye examination on plaintiff and, although noting "[o]bvious dry eyes," concluded that she maintained "[e]xcellent central distance visual acuity in both eyes." [AR 200]. Plaintiff's treating physician, Dr. Ken J. Bulpitt, also noted at various times that plaintiff had no loss of vision or other vision problems. [AR 233; see also AR 223, 231]. Further, consultative examiner Dr. Conception Enriquez found that plaintiff had "grossly normal" visual fields. [AR 284]. Regarding plaintiff's speech, examining psychiatrist Dr. Ernest Bagner found that her speech was "intact and coherent with normal rate, rhythm and volume." [AR 296]. Moreover, agency staff noted that plaintiff had no difficulty talking or answering questions during her "[t]eleclaim" interview. [AR 118]. The ALJ could properly consider this substantial evidence in assessing plaintiff's credibility. See Thomas, 278 F.3d at 958-959.

Next, the ALJ noted that plaintiff's subjective complaints about her eyes did not limit her from engaging in activities such as driving [AR 37, 294-295, 297], running errands [AR 295], grocery shopping [AR 295], e-mailing friends [AR 40, 53, 295], and watching television [AR 41, 297]. [AR 21]. Plaintiff contends that her visual acuity has "has nothing to do with [her] complaints" because "[o]ne can have excellent visual acuity and still have vision problems." [JS 9]. Plaintiff's argument misses the ALJ's point regarding her vision. The ALJ acknowledged that plaintiff had vision problems by finding the severe impairment of Sjogren's syndrome, an impairment that includes dryness of the eyes. [AR 18]. However, the ALJ found that the alleged severity of plaintiff's vision problems was inconsistent with her ability to participate in activities that necessarily involve satisfactory vision and are consistent with her RFC. The ALJ could properly consider this evidence in assessing plaintiff's credibility. Bunnell, 947 F.2d at 346-347 (holding that the ALJ may consider a claimant's daily activities in assessing credibility); see Wilson v. Astrue, 2012 WL 5183388, at *4 (E.D. Wash. Oct. 18, 2012) (holding that the claimant's statements concerning the severity of a vision impairment were inconsistent with driving a car regularly).

5

Additionally, the ALJ found that plaintiff's allegations of debilitating and chronic pain were inconsistent with her treatment, which was "essentially routine and/or conservative in nature." [AR 23]. Treating physician Dr. Bulpitt indicated that plaintiff's condition was partially controlled with medication, and that it was "critical [for him] to simplify [plaintiff's] medication regime as much as possible for her health and benefit." [AR 221]. Additionally, plaintiff indicated that she used heating pads to alleviate her symptoms. [AR 47]. As the ALJ stated, there is no indication that plaintiff sought, or was prescribed, a more aggressive form of treatment, such as referral to a pain clinic, or that other modalities, such as trigger point injections, were prescribed. [AR 23]. The ALJ's observation that plaintiff received routine and conservative care is a legitimate, convincing reason for discrediting her allegations of chronic pain. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged) (citing Bunnell, 947 F.2d at 346).

Moreover, the ALJ noted that plaintiff's medications appeared to partially control her symptoms until a flare-up occurred that her treating physician opined may have been due to a change in her medication. [AR 23]. Dr. Bulpitt noted in October 2006 that plaintiff had received medical attention from an alternative care center, where she was started on "multiple new medications." [AR 220]. Plaintiff then complained "of general flare-up with significant increased pain, burning in her lungs, and severe dryness of the mouth." [AR 220]. Dr. Bulpitt suspected that plaintiff's flare-up "could be due to a combination of medications and possibly withdrawal of some previous medications, which were partially controlling her condition." [AR 221]. He thought the medications prescribed by the alternative care center were "confounding the picture and have potential adverse effects." [AR 221]. Despite this, plaintiff said she wanted to continue to go to the alternative care center, and Dr. Bulpitt indicated he would "do the best [he could] to work within that constraint." [AR 221]. Plaintiff has offered no explanation for departing from Dr. Bulpitt's recommended course of treatment, or her choice to continue alternative care even though it worsened her symptoms. The ALJ permissibly relied on that evidence. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (explaining that an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can "cast doubt on the sincerity of" a claimant's subjective symptoms).

6

The ALJ discounted plaintiff's subjective complaints of impaired cognition, forgetfulness, and confusion because she had not been treated by a "mental health professional." [AR 23]. Dr. Bagner indicated in his August 2007 psychiatric evaluation that plaintiff said that she "takes psychiatric medications with moderate success," so it appears that plaintiff received some mental health treatment. [AR 297]. However, Dr. Bagner also said that plaintiff was "not currently seeing a psychiatrist or counselor." [AR 295]. The ALJ rationally concluded that plaintiff's paucity of mental health treatment undermined her allegations of disabling psychiatric symptoms.

The ALJ also permissibly discredited plaintiff's alleged disabling psychiatric symptoms because plaintiff's mental status examinations showed only mild limitations in memory and concentration. [AR 23]. This aspect of the ALJ's credibility finding is supported by the record. For example, Dr. Bagner concluded that plaintiff "would have zero to mild limitations maintaining concentration and attention and completing simple tasks." [AR 297]. He further concluded that she "would have mild limitations completing complex tasks and completing a normal workweek without interruption." [AR 297]. Nonexamining psychiatrist Dr. Raffi Tashjian concluded that plaintiff had symptoms of depression and generalized anxiety but had only mild difficulties in maintaining concentration, persistence, or pace. [AR 301-302, 306]. The ALJ's reliance on the conflict between plaintiff's subjective symptoms and examining and non-examining psychiatric physicians' findings and conclusions regarding the severity and effect of her symptoms was proper and supported by the record. See Thomas, 278 F.3d at 959.

Further, the ALJ indicated that plaintiff's "motivation to return to work may not be great, considering her testimony that she has received an insurance disability benefit since January 2006, currently at $2,750 a month." [AR 23]. During the hearing, plaintiff stated that she received state disability insurance benefits for one year, and that after that she received long-term disability insurance benefits. [AR 37]. Plaintiff's receipt of private disability benefits is not "inconsistent with h[er] disability allegations," Carmickle, 533 F.3d at 1162, and does not reasonably support an inference that she is unmotivated to work or lacks credibility. Therefore, plaintiff's receipt of private disability benefits was not a clear and convincing reason to discredit plaintiff's subjective testimony.

Although one of the reasons articulated by the ALJ to support her credibility finding was invalid, the ALJ's remaining reasons adequately support her credibility finding. Where, as here, the ultimate

7

credibility finding is supported by substantial evidence in the record, the ALJ's decision must be upheld. See Carmickle, 533 F.3d at 1162-1163.

**Treating physician**

Plaintiff contends that the ALJ did not properly evaluate the opinion of her treating physician, Dr. Wayne Wightman. [JS 11-13]. Plaintiff primarily contends that her impairments, in particular fibromyalgia, are not subject to objective verification, so it was improper for the ALJ to reject Dr. Wightman's opinion in part because it lacked such verification. [JS 11-12, 16].

During the hearing, plaintiff indicated that Dr. Wightman is a "sexual hormone doctor" who runs a clinic called the "fibromyalgia and chronic fatigue center." [AR 39]. Progress notes indicate that Dr. Wightman saw plaintiff about nine times between July 27, 2006 and November 20, 2008 for a variety of symptoms, including sleeping problems, fatigue, pain, dizziness, dry eyes, an eye infection, headaches, vision problems, anxiety, and libido loss. [AR 267-272, 333-341, 374-375].[3] On April 18, 2007, he diagnosed plaintiff with hypothyroidism, adrenal fatigue, and depression, and concluded that she was "unable to work at this time[,] ongoing treatment." [AR 274-275]. On June 10, 2008, he reached the same conclusion about her inability to work, but stated that plaintiff suffered from chronic fatigue syndrome, fibromyalgia with impaired concentration, and fatigue. [AR 372-373].

Consultative physician Concepcion Enriquez examined plaintiff on June 7, 2007. [AR 283-286]. The physical examination revealed no acute distress. [AR 284]. She noted that plaintiff's neck was supple, but that plaintiff had "tenderness in the cervical spine area with decreased range of motion at 50/60 degrees on extension." [AR 285]. Plaintiff's range of motion was grossly within normal limits. [AR 295]. There was "no tenderness to palpation or muscle spasm noted." [AR 285.] Dr. Enriquez indicated that plaintiff appeared depressed. [AR 286]. Dr. Enriquez's medical impression was that plaintiff had "mild diffuse tender points" in her extremities. [AR 285-286]. She had tenderness on the cervical spine area with mild decreased range of motion, but there were no signs of radiculopathy. [AR 286]. Dr. Enriquez's functional assessment was that plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry 10 pounds. Plaintiff could also stand and walk, or sit, with normal breaks for six hours in an eight-hour

---

[3] Many of the progress notes appear in duplicate in the record.

workday. [AR 286].

The nonexamining state agency physician opined that plaintiff could perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. [AR 22, 287-291].

During the hearing, the medical expert, Dr. Sami Nafoosi, stated that he had reviewed plaintiff's records and listened to the hearing testimony. [AR 59]. He opined that plaintiff had a disorder of both the cervical and lumbar spine, and diagnoses of fibromyalgia, Sjogren's syndrome, and depressive disorder. [AR 45]. Dr. Nafoosi opined that none of these impairments was severe. [AR 45-46]. He also said that there was objective evidence supporting a painful condition in plaintiff's neck and lower back. [AR 58]. Dr. Nafoosi discussed plaintiff's complaints of fatigue and said that fatigue could be debilitating, but that there was no objective evidence on which to base an opinion regarding the effects of plaintiff's fatigue on her ability to work. [AR 58]. Dr. Nafoosi said that plaintiff's associated condition of depressive disorder would alter her sense of well being, and that in turn could affect plaintiff's perceptions of her own limitations. [AR 58]. Dr. Nafoosi also said fatigue could result in objective symptoms such as recurrent infections or weight loss, but neither of those were evident in plaintiff's case. [AR 58]. Dr. Nafoosi concluded that plaintiff's impairments would limit her in the work setting consistent with the ALJ's RFC determination. [AR 19, 46].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Fibromyalgia is a unique affliction. Its cause is unknown; it is diagnosed on the basis of a patient's reported pain and other symptoms; and there are no laboratory tests to confirm the diagnosis. Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). It is generally not appropriate to rely on the absence of objective medical evidence alone to discredit a claimant's claims of pain stemming from fibromyalgia. See Benecke, 379 F.3d at 594.

The ALJ accorded Dr. Wightman's opinion significantly less weight than the opinions of the

examining and nonexamining physicians. The ALJ first noted that Dr. Wightman made no findings of tender points on a twenty-one point evaluation. [AR 273, 342]. The accepted diagnostic criteria for fibromyalgia include subjective complaints of pain in at least eleven of eighteen tender points. Jordan, 370 F.3d at 877; see also Rollins, 261 F.3d at 855. By noting this, however, the ALJ was not requiring objective evidence of fibromyalgia, as plaintiff contends [JS 11-12]. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (stating that fibromyalgia is diagnosed on the basis of a patient's reported pain and other symptoms). Instead, the ALJ permissibly rejected Dr. Wightman's opinion because he omitted the generally accepted diagnostic findings from his evaluation. See Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *2-*3 (noting that ALJ "cannot rely upon the physician's [fibromyalgia] diagnosis alone," and that medical evidence "must document that the physician reviewed the person's medical history and conducted a physical exam," and that person met specific diagnostic criteria); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (holding that the ALJ permissibly rejected the contradicted opinion of a treating doctor whose "extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes").

The ALJ also rejected Dr. Wightman's opinion because it was inconsistent with other medical opinion evidence in the record. For example, the ALJ noted that Dr. Wightman's conclusion that plaintiff had impaired concentration [AR 372] conflicted with Dr. Bagner's 2007 psychiatric examination. As mentioned above, Dr. Bagner concluded that plaintiff "would have zero to mild limitations maintaining concentration and attention and completing simple tasks." [AR 297]. Dr. Bagner further concluded that she would have only mild limitations completing complex tasks and completing a normal work week without interruption. [AR 297]. The ALJ also noted that Dr. Wightman's assessment contrasted sharply with Dr. Enriquez's opinion and functional assessment, summarized above. [AR 22]. Finally, the ALJ stated that Dr. Wightman's opinion conflicted with Dr. Nafoosi's opinion. [AR 22-23]. The ALJ assigned greater weight to Dr. Nafoosi's assessment because Dr. Nafoosi had the benefit a longitudinal perspective of the record, which included evidence and hearing testimony not available to the other doctors. [AR 23]. Given the nature of plaintiff's complaints based on fibromyalgia, the ALJ could properly take into consideration Dr. Nafoosi's longitudinal perspective. See SSR 12-2P, 2012 WL 3104869, at *3 ("When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment

from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment."); see also 2012 WL 3104869, at *6 (in assessing an RFC for a person with fibromyalgia, "we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). The examining and non-examining opinions of Dr. Bagner, Dr. Enriquez, and Dr. Nafoosi, which are based on independent clinical findings, provided an additional, legitimate reason for the ALJ's rejection of Dr. Wightman's opinion. See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) ("Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided [and] the consistency of the medical opinion with the record as a whole . . . ."); Tonapetyan, 242 F.3d at 1149 (holding that the ALJ permissibly rejected a treating physician's opinion "because it was unsupported by rationale or treatment notes," that the contrary opinions of an examining and non-examining physician "serve as additional specific and legitimate reasons for rejecting the opinions," and that the contrary examining and non-examining source opinions constitute substantial evidence because they were based on objective findings independent of those relied on by the treating physician).

Finally, the ALJ stated that Dr. Wightman's conclusions regarding fatigue were contradicted by plaintiff's testimony during the hearing about being able to independently care for herself and engage in a range of daily activities. [AR 22]. These included the activities discussed above regarding the ALJ's credibility assessment (driving, shopping, running errands, watching television), as well as plaintiff's ability to attend water aerobics classes twice a week [AR 53,295], attend Pilates classes once a week [AR 39], do stretches [AR 295], attend doctor appointments often [AR 267-272, 333-341, 374-375], manage her money [AR 295], and partake in pastimes of art and music [AR 295].[4] [AR 22]. This conclusion is supported by substantial evidence. The ALJ may reject a treating physician's opinion that is based on discredited subjective complaints or is inconsistent with the claimant's level of activity. See Tonapetyan, 242 F.3d at 1149; Rollins, 261 F.3d at 856; Montalvo v. Astrue, 237 F. App'x 259, 261-262 (9th Cir. 2007) (holding that ALJ properly discredited treating physicians' conclusions regarding severity of conditions, including

---

[4] Although not mentioned by the ALJ, during the hearing plaintiff also explained that she walks her dog on a regular basis [AR 39-40, 52] and snorkels [AR 41].

11

fibromyalgia, based in part on claimant's daily living activities of bathing and dressing herself, seeing her children off to school, helping with household chores, meeting with family, and going to the mall); Martinez v. Astrue, 2012 WL 6093509, at *10 (C.D. Cal. Dec. 7, 2012) (holding that ALJ properly accorded little weight to treating physician's conclusions regarding fibromyalgia because claimant's daily living activities consisted of dressing and bathing himself, shopping, running errands, walking, watching television, driving, shopping at the grocery store, and other activities).

For these reasons, the ALJ articulated specific, legitimate reasons based on substantial evidence for his evaluation of Dr. Wightman's opinion.

**Failure to discuss treating physician opinion**

Plaintiff contends that the ALJ failed to discuss Dr. Bulpitt's conclusion in a January 13, 2006 treatment record that plaintiff was "at least temporarily unable to function at work." [JS 17-18 (citing AR 234)].

Dr. Bulpitt treated plaintiff for a variety of complaints. On January 13, 2006, Dr. Bulpitt stated that plaintiff was "unable to function at work given the multitude of medical problems and symptoms." [AR 234]. Dr. Bulpitt further stated that he discussed with plaintiff "putting her temporarily on disability while we continue to workup and to treat her illness." [AR 234]. On January 27, 2006, plaintiff had a follow-up visit with Dr. Bulpitt. He changed some of her medications, but he made no mention of a continuing inability to function at work and did not state that she was disabled. [AR 232]. On February 10, 2006, plaintiff had another follow-up visit with Dr. Bulpitt. The doctor again made no mention of disability. The doctor indicated that his impression was that her condition was improving. [AR 231].

The ALJ repeatedly cited Dr. Bulpitt's treatment notes in assessing plaintiff's credibility regarding the severity of her symptoms, and specifically referenced "her physician['s] opin[ion]" regarding the flare-up of plaintiff's symptoms discussed above. [AR 21-23 (citing Exhibit 3F, Dr. Bulpitt's treatment notes)]. Plaintiff does not make any attempt to demonstrate how Dr. Bulpitt's medical opinion would have shown she was disabled, and concedes that "the ALJ could have rejected this opinion for a variety of reason[s]". [JS 18]. Even assuming that Dr. Bulpitt's treatment notes could support the conclusion that plaintiff was temporarily disabled from January 13, 2006, until January 27, 2006, or even until February 10, 2006, when plaintiff's condition improved, this brief period does not meet the requirement for a finding of disability.

See 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last *for a continuous period of not less than 12 months*") (italics added). Plaintiff makes no attempt to show how she has met this aspect of the definition of disability, and merely points out that Dr. Bulpitt's conclusion might be helpful in analyzing disability for worker's compensation purposes under California law. [JS 19-20]. Because Dr. Bulpitt's treatment notes do not support a finding that plaintiff was disabled, even if the ALJ erred by not specifically addressing an aspect of Dr. Bulpitt's notes, the error would be harmless. See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th Cir. 2011) (holding that the same kind of harmless error rule that courts ordinarily apply in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409 (2009)).

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

February 5, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **KAREN ANDERSON,** | ) |
| **Plaintiff,** | ) Case No. SACV 11-01820 AJW |
| v. | ) **J U D G M E N T** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** | ) |
| **Defendant.** | ) |

**IT IS ADJUDGED** that defendant's decision is affirmed.

_____, 20\_\_\_

_____
ANDREW J. WISTRICH
United States Magistrate Judge